1

2

3

4                    UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6

7    AMERICAN BANKERS INSURANCE          Case No. 19-cv-02237-HSG
     COMPANY OF FLORIDA,
8                                        **ORDER GRANTING SUMMARY**
            Plaintiffs,                  **JUDGMENT**
9
        v.                               Re: Dkt. No. 87
10
     NATIONAL FIRE INSURANCE
11   COMPANY OF HARTFORD,

12          Defendant.

13          Pending before the Court is The Travelers Indemnity Company (as successor to Insurance

14   Company of the Pacific Coast), The Phoenix Insurance Company, and The Charter Oak Fire

15   Insurance Company's (collectively, "Travelers" or "Defendants") motion for summary judgment.

16   Dkt. No. 87 ("Mot."), 96 ("Opp."), and 98 ("Reply").[1]  The Court **GRANTS** Defendants' motion.

17   **I.     BACKGROUND**

18          This action consists of two consolidated cases, *American Bankers Ins. Co. of Florida v.*

19   *The City of Walnut Creek*, No. 19-cv-2237, and *The City of Walnut Creek v. Admiral Ins. Co. et*

20   *al.*, No. 19-cv-3556.  Both actions stem from three underlying actions: *Coleman et al v. City of*

21   *Walnut Creek*, Contra Costa Superior Court, Case No. C-03-3157 ("*Coleman I*"), *Coleman et al. v.*

22   *City of Walnut Creek*, Contra Costa Superior Court, Case No. C-12-2997 ("*Coleman II*"), and

23   *Garibian et al v. City of Walnut Creek*, Contra Costa Superior Court, Case No. C-14-0777

24

25   [1] In addition to their reply in support of the motion for summary judgment, Travelers also filed a
     brief styled as "evidentiary objections" to the declarations and accompanying exhibits that
26   Plaintiffs submitted in support of their opposition to Travelers' motion for summary judgment.
     *See* Dkt. No. 99.  However, Travelers' submission does not comply with the Civil Local Rules,
27   which require that "[a]ny evidentiary and procedural objections to the motion must be contained
     within the [reply] brief or memorandum," and that any such brief or memorandum may not exceed
28   25 pages.  See Civil L.R. 7-3(a), 7-4(b).  The Court accordingly **STRIKES** the evidentiary
     objections from the record and does not consider them for purposes of this order.

United States District Court
Northern District of California

United States District Court
Northern District of California

("*Garibian*").  Underlying plaintiffs in those cases sued the City for its alleged failure to develop and maintain storm drains, which caused flooding and damage to their real property.  The City settled each case.  Dkt. No. 30 ¶¶ 10, 14 (First Amended Complaint).  The City now alleges that its policies with Admiral Insurance Company, Travelers, Insurance Company of the State of Pennsylvania, Atlanta International Insurance Company, American Bankers Insurance Company of Florida, Transcontinental Insurance Company (National Fire Insurance Company of Hartford is their successor-in-interest), and Columbia Casualty Company (collectively, "Insurers") for some period between 1968 to 1986 should indemnify all damages and fees.  *Id.* ¶¶ 21–34.  The instant motion is filed by only Defendant Travelers.

### A.    Underlying Actions

On December 22, 2003, underlying plaintiffs Kenneth Coleman, Gina Coleman, Marc Malott, and Mary Malott filed the *Coleman I* action against the City.  Dkt. No. 87-3 ("Esposito Decl.") at ¶ 7, Ex. 4 (*Coleman I* Compl.).  The *Coleman I* complaint alleged that due to the "expansion of the development of the City of Walnut Creek . . . and the diversion of ground water which results from the implementation of those plans," the underlying plaintiffs suffered property damage because of flooding.  *Id.*  In September 2006, the City settled with the underlying plaintiffs.  Esposito Decl. at ¶ 8, Ex. 5 (*Coleman II* Compl.), Ex. A ("2006 Settlement Agreement").  As part of the 2006 Settlement Agreement, the City agreed to pay $50,000 the underlying plaintiffs and $32,500 their attorneys, to reimburse any "physical injuries to only real or personal property, appurtenances and possession, as well as repairs thereto" between the time of the settlement and December 31, 2012," and noted "the present expectation that [] funding will be available and that the Future Storm Drain Facilities will be completed."  *Id.* at CF 000050–52, CF 000055–57.

In 2010, the City then notified the underlying plaintiffs that it did not intend to construct the storm drains noted in the 2006 settlement agreement.  *Coleman II* Compl., Ex. B.  The underlying plaintiffs then filed *Coleman II* on December 27, 2012, raising the same claims as *Coleman I*, and including new allegations of the City's breach of the 2006 settlement agreement.  *Coleman II* Compl.  On May 19, 2014, Carlos and Beatriz Garibian, Stanley and Jan Lindberg,

1    Lauren Dodge, Michael Lannes, and Jeanne Dodge filed the *Garibian* action.  Esposito Decl. at

2    ¶ 9, Ex. 6 (*Garibian* Compl.).[2]  The *Garibian* underlying plaintiffs further alleged that "[i]n

3    reasonable reliance on [the 2006 settlement agreement's] promise that the storm water system

4    would be improved and repaired, Plaintiffs expended substantial monies on improvements to their

5    properties."  *Id.* at CF 000066.

6         *Garibian* and *Coleman II* were settled together on April 19, 2018,  *See* Dkt. No. 87-2

7    ("Chorley Decl.") at ¶ 3, Ex. 19.  As part of the 2018 settlement, the City agreed to pay underlying

8    plaintiffs $297,837 and their attorneys $91,723.  *Id.* at ADM 000172.  The parties again

9    contemplated the possibility that because "the cost of the Future Storm Drain Facilities is

10   reasonably expected to exceed $10,000,000 due to unforeseen circumstances or unexpected costs,

11   the City . . . may decide not to complete" the facilities, and provided that the *Coleman II* and

12   *Garibian* actions could be placed back on the court's calendar.  *Id.* at ADM 000174.

13        **B.     Policies at Issue**

14        Travelers issued three policies to Walnut Creek: (1) Policy No. TOP-58-00-86-24 issued

15   by The Phoenix Insurance Company ("Phoenix Policy") for the period January 16, 1968 to

16   January 16, 1971, (2) Policy No. OND-350276 issued by The Charter Oak Fire Insurance

17   Company ("Charter Oak Policy") for the period January 16, 1971 to July 1, 1971, and (3) Policy

18   No. PS-568-37-83 issued by the Insurance Company of the Pacific Coast ("ICPC Policy") for the

19   period July 1, 1975 to July 1, 1976.  *See* Dkt. No. 87-3 ("Esposito Decl."), Ex. 1 (Phoenix Policy),

20   Ex. 2 (Charter Oak Policy), Ex. 3 (ICPC Policy) (collectively, the "Policies").  The Policies all

21   provided general liability insurance coverage and had policy limits of $300,000.  *Id.*

22        The Phoenix Policy provides in relevant part:

23             DEFENSE OF CLAIMS:

24

25   [2] The Court **DENIES AS MOOT** Travelers' motion for judicial notice of the complaints in the
     underlying actions because the request is unnecessary and duplicative.  At the summary judgment

26   stage, the Court may reasonably consider the evidence presented by the parties and determine the
     extent to which it is relevant.  It need not take judicial notice in order to consider the documents.

27   Travelers includes the underlying complaints as exhibits attached to the Declaration of Mark
     Esposito.  *See* Dkt. Nos. 87-3, Ex. 4, 5, 6.  The Court further **DENIES AS MOOT** Travelers'

28   request for judicial notice of the docket of the *Garibian* action because the Court does not rely on
     any information contained in the docket.

United States District Court
Northern District of California

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> In connection with all coverages afforded by the policy, the insurance company shall furnish all legal counsel and shall defend all claims made against the insured, even if such claim is groundless, false or fraudulent. The insurance company shall have the right, at its sole expense, to make such investigation, negotiation, and settlement of any claim or suit as it deems expedient.
> . . .
> POLICY PERIOD, TERRITORY
> This insurance applies only to bodily injury or property damage which occurs during the policy period within the policy territory
>
> . . .
> Insured's Duties in the Event of Occurrence, Claim or Suit
> (a) In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the insured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable.  The named insured shall promptly take at his expense all reasonable steps to prevent other bodily injury or property damage arising out of the same or similar conditions but such expenses shall not be recoverable under this policy.
> (b) If a claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

Phoenix Policy at POL011, POL015, POL019.

The Charter Oak Policy provides in relevant part:

> General Conditions
> 2. Application of Policy - Section I, II, III, and IV of this policy apply only to accidents, occurrences and loss which occur during the period this policy is in effect within the United States of America or Canada.
> 3. Sections II, III, and V - Insured's Duties in the Event of Loss, Accident or Occurrence.
> (a) Section II and III -
> (1) In the event of an accident or occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information respecting time, place and circumstances thereof, and the names and address of the injured and of available witnesses, shall be given by or on behalf of the insured to the Travelers or any of its authorized agents as soon as practicable.
> (2) If claim is made or suit is brought against the insured, the insured shall immediately forward to the Travelers every demand, notice, summons, or other process received by him or his representative.
> . . .
> (d) Occurrence - The word "occurrence" means an accident, including injurious exposure to conditions, which results, during the period this policy is in effect, in bodily injury or property damage neither expected nor intended from the standpoint of the Insured.

Charter Oak Policy at POL098, POL134.

United States District Court
Northern District of California

1       The ICPC Policy provides in relevant part:

2           Policy Period, Territory
3           This policy applies only to occurrences which take place during the
            policy period anywhere in the world.
            . . .
4
5           Definitions
            (a) Occurrence. The word "occurrence" means an event or a
6           continuous or repeated exposure to conditions which causes injury to
            persons or damage to property during the policy period that is neither
7           knowingly nor intentionally caused by or at the direction of the
            insured.
8           Notice of an Occurrence. Upon the happening of an occurrence
            written notice shall be given by or on behalf of the insured to the
9           company or any of its authorized representatives as soon as
            practicable after an officer or employee in charge of reporting such
10          losses to insurance companies learns of the occurrence. Such notice
            shall contain particulars sufficient to identify the insured and also
11          reasonably obtainable information with respect to the time, place and
            circumstances of the occurrence, the name and addresses of the
12          injured and of available witnesses.
            Notice of Claim or Suit. If claim is made or suit is brought against the
13          insured, the insured shall immediately forward to the company every
            demand, notice, summons, or other process received by him or his
14          representative.

15  ICPC Policy at POL211, POL212.

16          After uncovering the Policies, the City first tendered notice to Travelers on January 31,

17  2017, for defense and indemnity of the three underlying actions.  Esposito Decl., Ex. 8 at CF

18  000001.  By this time, *Coleman I* had already been settled.  The letter noted that "[t]he City [was]

19  close to finalizing settlement with [the *Coleman II* and *Garibian* plaintiffs] in the consolidated

20  actions," and that in addition to the property damage, "[t]he City will also be required, as part of

21  the costs it must pay under the settlement to repair and remediate the storm drainage system which

22  serves the Plaintiff's properties," at an estimated cost of $5 million.  *Id.* at CF 000002.  Travelers

23  denied coverage on May 16, 2017.  Esposito Decl., Ex. 15 at CF 000187–0000195.

24  **II.    LEGAL STANDARD**

25          Summary judgment is proper when a "movant shows that there is no genuine dispute as to

26  any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

27  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson*

28  *v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if there is evidence in the

5

1    record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* The

2    Court views the inferences reasonably drawn from the materials in the record in the light most

3    favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

4    574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations,"

5    *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v.*

6    *Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008).

7            The moving party bears both the ultimate burden of persuasion and the initial burden of

8    producing those portions of the pleadings, discovery, and affidavits that show the absence of a

9    genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the

10   moving party will not bear the burden of proof on an issue at trial, it "must either produce

11   evidence negating an essential element of the nonmoving party's claim or defense or show that the

12   nonmoving party does not have enough evidence of an essential element to carry its ultimate

13   burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102

14   (9th Cir. 2000). Where the moving party will bear the burden of proof on an issue at trial, it must

15   also show that no reasonable trier of fact could not find in its favor. *Celotex Corp.*, 477 U.S. at

16   325. In either case, the movant "may not require the nonmoving party to produce evidence

17   supporting its claim or defense simply by saying that the nonmoving party has no such evidence."

18   *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1105. "If a moving party fails to carry its initial

19   burden of production, the nonmoving party has no obligation to produce anything, even if the

20   nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 1102–03.

21           "If, however, a moving party carries its burden of production, the nonmoving party must

22   produce evidence to support its claim or defense." *Id.* at 1103. In doing so, the nonmoving party

23   "must do more than simply show that there is some metaphysical doubt as to the material facts."

24   *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. A nonmoving party must also "identify with

25   reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91

26   F.3d 1275, 1279 (9th Cir. 1996). If a nonmoving party fails to produce evidence that supports its

27   claim or defense, courts enter summary judgment in favor of the movant. *Celotex Corp.*, 477 U.S.

28   at 323.

*United States District Court*
*Northern District of California*

**III.    ANALYSIS**

Travelers raises several arguments in support of its request for summary judgment.  *See generally* Mot.  First, Travelers argues that the underlying actions did not seek recovery for property damage that occurred during the policy period of any of the policies.  *Id.* at 16–20. Second, Travelers contends that the City failed to give timely notice of the underlying actions as required by the policies.  *Id.* at 20–22.  Finally, Travelers argues that the amounts requested are not covered by the Policies due to the City's breach of the no voluntary payments provision and are prophylactic in nature.  *Id.* at 22–25.  Because the Court finds that the City fails to show an occurrence of property damage during the policy periods, and alternatively that Travelers has established substantial prejudice due to the City's failure to timely tender notice, it **GRANTS** Travelers' motion for summary judgement.[3]

**A.    "Occurrences" under the Policies**

Under California law, "[s]tandard comprehensive or commercial general liability insurance policies provide, in pertinent part, that the insurer has a duty to indemnify the insured for those sums that the insured becomes legally obligated to pay as damages for any covered claim . . . and that the insurer has a duty to defend the insured in any action brought against the insured seeking damages for any covered claim." *Buss v. Superior Court*, 939 P.2d 766, 773 (Cal. 1997).  "[T]he insurer's duty to defend runs to claims that are merely potentially covered," *id.*, and this requires "the possibility of actual indemnity coverage, not the mere existence of a plausible argument." *Friedman Prof. Mgmt. Co. v. Norcal Mut. Ins. Co.*, 15 Cal. Rptr. 3d 359, 373 (Cal. Ct. App. 2004). Travelers' principal argument is that the property damage alleged here does not qualify as an "occurrence" as defined in the Policies, such that it triggered Travelers' duty to defend or indemnify.  Mot. at 16–20.  In response, the City argues that there is the possibility of actual indemnity coverage because the underlying actions stemmed from continuing injury to the plaintiffs from the City's early development, beginning in the early 1960s.  Opp. at 5–9.

"California courts have long recognized that coverage in the context of a liability insurance

---

[3] Because either ground is a sufficient basis for granting Travelers' motion, the Court does not reach Travelers' argument regarding the voluntary payments provision.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    policy is established at the time the complaining party was actually damaged." *Montrose Chem.*

2    *Corp. v. Admiral Ins. Co.*, 913 P.2d 878, 10 Cal. 4th 645, 669 (Cal. 1995); *see also Remmer v.*

3    *Glens Falls Indem. Co.*, 140 Cal. App. 2d 84, 88 (Cal. Ct. App. 1956) ("The general rule is that

4    the time of the occurrence of an accident within the meaning of an indemnity policy is not the time

5    the wrongful act was committed, but the time when the complaining party was actually

6    damaged."). The City relies on *Montrose* to argue that the injury here was continuous, beginning

7    in the 1960s, such that damage occurred during the policy periods. Opp. at 7–9.

8            In *Montrose*, the California Supreme Court held that "[i]n the case of successive policies,

9    bodily injury and property damage that is continuous or progressively deteriorating throughout

10   several policy periods is potentially covered by all policies in effect during those periods." 10 Cal.

11   4th at 655. There, the court found that contamination damage, which incepted in 1968, triggered

12   the policies at issue (which provided coverage from 1982 to 1986) because they defined

13   occurrence as "an accident, including continuous or repeated exposure to conditions." *Id.* at 656.

14   Similarly, in *Stonewall Ins. Co. v. City of Palos Verdes Estates*, the California Supreme Court

15   found that "there was a 'continuing injury' (a continuous 'occurrence,' using the language of the

16   policies) throughout the period from the beginning of the damage to the [] property for which the

17   City was at fault until that damage became complete-so that all insurers whose policies were in

18   force during any portion of that period covered the loss to the city arising out of that damage." 54

19   Cal. Rptr. 2d 176 (Cal. Ct. App. 1996), *as modified* (July 19, 1996). In *Stonewall*, the court found

20   that a city's negligent operation of a stormwater system contributed "minor erosion damage,"

21   ultimately leading to a landslide that destroyed underlying plaintiff's property. *Id.* This "minor

22   erosion damage" was sufficient to potentially trigger coverage for all policies during the negligent

23   operation period. Relying on these cases, the City argues that the underlying property damage

24   alleged here was continuous starting from the City's upstream development in the 1960s.

25           The express policy language of the ICPC Policy defines "occurrence" as "an event or a

26   continuous or repeated exposure to conditions which causes injury to persons or damage to

27   property during the policy period." ICPC Policy at POL212. Much like in *Montrose*, the "policy

28   language unambiguously distinguishes between the causative event—an accident or 'continuous

8

United States District Court
Northern District of California

1      and repeated exposure to conditions'—and the resulting 'bodily injury or property damage.'" 10

2      Cal. 4th at 669.  The Charter Oak Policy defines "occurrence" as "an accident, including injurious

3      exposure to conditions, which results, during the period this policy is in effect, in bodily injury or

4      property damage."  Charter Oak Policy at POL134.  This definition lacks the specific "continuous

5      or repeated" language, but the same rationale that "[i]t is the latter injury or damage that must

6      'occur' during the policy period," and not necessarily the accident, applies.  *Montrose*, 10 Cal. 4th

7      at 669.  Accordingly, the Court agrees that if the City can show a continuous condition that led to

8      the underlying damage, the policy language could support coverage such that a dispute of material

9      fact exists.

10            Travelers argues that there is nothing in the Complaint, the underlying complaints, or the

11     settlement agreements of the underlying cases to show that the injury or damage began in the

12     1960s.  *See* Mot. at 17–20.  Instead, Travelers argues that the allegations in the underlying

13     complaints and settlement agreements show that underlying plaintiffs were not injured until, at the

14     earliest, December 2000.  Mot. at 18 (citing 2006 Settlement Agreement at CF 000051 (seeking

15     recovery for damages incurred "at certain times within three years prior to December 22, 2003 and

16     continuing thereafter.").  Thus, according to Travelers, the damage did not occur during the policy

17     periods such that it triggered coverage since the Policies' terms ended in 1976 at the latest.  Based

18     on the evidence presented, the Court agrees.

19            The City alleges the upstream development began in the 1960s, but development does not

20     constitute property damage or flooding sufficient to cause property damage to underlying

21     plaintiffs.  *See Montrose*, 10 Cal. 4th at 655 (finding potential coverage where "property damage []

22     is continuous or progressively deteriorating throughout [the] policy periods").  Instead, "the time

23     at which the property damage becomes manifest . . . is 'that point in time when appreciable

24     damage occurs or is or should be known to the insured, such that a reasonable insured would be

25     aware that his notification duty under the policy had been triggered.'"  *Id.* at 674 (quoting

26     *Prudential-LMI Com. Ins. v. Superior Court*, 51 Cal. 3d 674, 699, 798 P.2d 1230 (1990), *as*

27     *modified* (Dec. 13, 1990).  Here, the City makes no allegations that it knew or should have known

28     of any damage prior to the underlying actions.  Additionally, none of the underlying complaints,

1    settlement agreements, or even the mediation brief cited by the City regarding this precise fact

2    provide information as to when damaging flooding  constituting "appreciable damage" began.

3    While the 2006 Mediation Brief in *Coleman I* noted that the flooding "resulted from the continued

4    development of other properties both upstream and downstream of the [underlying] Plaintiff's

5    properties without provision of adequate drainage," *see* Dkt. No. 96-2 ("Botha Decl."), Ex. 8 at 1,

6    the *Coleman I* and *Coleman II* plaintiffs sought compensation for damage that occurred on or after

7    December 2000.  *See Coleman I* Compl. at CF 000009; *Coleman II* Compl. at CF 000024.

8    Further, the *Garibian* plaintiffs alleged that "[f]or many years" the "surface waters flowing near

9    and on Plaintiffs' properties were disbursed without damage to Plaintiffs' property."  *Garibian*

10   Compl. at CF 000065.  The earliest indication of actual property damage from development was,

11   as Travelers notes, in the 2006 Settlement Agreement where underlying plaintiffs sought damages

12   incurred "within three years prior to December 22, 2003 and continuing thereafter."  2006

13   Settlement Agreement at CF 000051.  These facts establish continuing property damage from

14   development beginning in 2000 at the earliest, decades after the last policy in question expired.[4]

15        Because Plaintiff provides no evidence to put this material fact in dispute, the Court agrees

16   that no "occurrence" triggered Travelers' duty to indemnify or defend the underlying actions,

17   warranting the entry of summary judgment on this basis.

18        **B.    Timely Notice of Actions**

19        Travelers also argues that the City failed to give notice, unduly prejudicing Travelers so as

20   to preclude coverage.  Mot. at 20–22.  Even if the damages alleged occurred during the policy

21   periods, the Court alternatively agrees that the failure to provide notice precludes coverage such

22

23   _____

     [4] The City's argument that Travelers' inability to admit or deny whether the properties were
24   damaged by flooding earlier somehow shows a genuine dispute of fact is unconvincing, and more
     importantly, irrelevant.  California law focuses on when the damage occurred or was known or
25   should have been known to the insured; an insurer's perspective on this question provides no
     meaningful evidence.  *See Prudential-LMI Com. Ins.*, 51 Cal. 3d at 699.  Similarly, the City's
26   speculation that property damage may have existed prior to the Policies' periods cannot support a
     duty to defend where the allegations in the underlying cases specifically detail that damage
27   occurred afterwards.  *See Hurley Constr. Co. v. State Farm Fire & Cas. Co.*, 10 Cal. App. 4th 533,
     538 (1992) ("A corollary to this rule is that the insured may not speculate about unpled third[-
28   ]party claims to manufacture coverage.").  The underlying allegations simply fail to detail any
     damage prior to approximately December 2000, well after the Polices expired.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    that summary judgment is appropriate.

2          The Policies required the City to give notice of any covered occurrence "as soon as

3    practicable," and provided that "insured shall immediately forward to the company every demand,

4    notice, summons or other process received by him or his representative." *See e.g.*, Phoenix Policy

5    at POL019.  "Under California law, an insured's breach of these conditions will relieve the insurer

6    of liability if it is actually prejudiced by the late notice." *Collin v. Am. Empire Ins. Co.*, 26 Cal.

7    Rptr. 2d 391 (Cal. Ct. App. 1994).  The City tendered notice on January 31, 2017, and demanded

8    that Travelers reimburse it for $5,346,837.94 in indemnification costs and $190,392.72 in defense

9    costs.  Esposito Decl. Ex. 7 at CF 000003.  The City's only basis for contending that this notice

10   was "as soon as practicable" is that "the City did not know of the existence of the policies,

11   therefore it could not have provided written notice [sooner]."  Opp. at 14.  This is insufficient.

12   The City does not present evidence regarding any sort of due diligence in the fourteen years after

13   *Coleman I* was filed.  Furthermore, the City's argument is undercut by Travelers' evidence that the

14   City tendered notice of a different suit under the ICPC Policy on February 8, 1993, thus indicating

15   that the City was aware of at least one of the Policies.  Esposito Decl. at ¶ 18, Ex. 15 at CF

16   000188.  Still, it took the City over fourteen years to tender notice of the *Coleman I* suit, and three

17   to five years for the *Coleman II* and *Garibian* suits.  *See Collin*, 26 Cal. Rptr. 2d at 391 (finding

18   that "[t]wo years does not readily fall within one's concept of 'prompt.'").  Thus, the Court finds

19   there was late notice here.

20         The next question is whether Travelers was prejudiced by the City's failure to notify.

21   "California's notice-prejudice rule requires an insurer to prove that the insured's late notice of a

22   claim has substantially prejudiced its ability to investigate and negotiate payment for the insured's

23   claim." *Pitzer Coll. v. Indian Harbor Ins. Co.*, 447 P.3d 669, 674 (Cal. 2019).  "A finding of

24   substantial prejudice will generally excuse the insurer from its contractual obligations under the

25   insurance policy, unless the insurer had actual or constructive knowledge of the claim." *Id.*

26   "Substantial prejudice means the insurer must prove that the lack of timely notice had an adverse

27   effect on the ability of the insurer to investigate and prepare a defense in the underlying claim."

28   *Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 15 Cal. Rptr. 2d 815, 844 (Cal. Ct. App. 1993).  Here,

1   Travelers argues that because it did not have the opportunity to participate in selection of defense

2   counsel (under "approved rates") and did not have the opportunity to participate in settlement

3   negotiations to achieve a more favorable outcome, it was prejudiced as a matter of law.  Mot. at

4   22.

5          The City does not make any meaningful argument in response beyond noting that

6   California has a strong policy preference against technical forfeitures with notice requirements,

7   and urging that Travelers needs to show more than a "mere possibility" of prejudice.  Opp. at 16–

8   17.  The California policy preference is encompassed in the requirement to show substantial

9   prejudice.  Thus, the City's first argument adds nothing meaningful to the analysis.  And despite

10  the City's pleas to the contrary, the Court finds that Travelers has sufficiently shown substantial

11  prejudice.  The City provided Travelers with its first notice fourteen years after *Coleman I* was

12  filed and nine years after it was settled.  This notice was also five years after *Coleman II* was filed,

13  four years after *Garibian* was filed, and after the City had begun settlement negotiations with the

14  underlying plaintiffs.  In all three cases, Travelers was unable to lower defense costs or

15  meaningfully influence the settlement negotiations because it never had the chance to participate

16  in critical stages of the cases.  *See Select Ins. Co. v. Superior Court*, 226 Cal. App. 3d 631, 637–

17  638 (Cal. Ct. App. 1990) (reversing summary judgment in favor of the insured where insured

18  failed to give notice to the insurer "until four years after [the claims] had been filed and three

19  months after [underlying plaintiff] had been awarded . . . damages," on the ground that "lack of

20  notice may have deprived his insurer not just of the opportunity to pay for [a] defense but of the

21  opportunity to settle the [claim] for considerably less.").  Importantly, Travelers relied on the lack

22  of notice as the first reason for denial of coverage, such that it can now rely on the City's failure to

23  perform this condition of the policy.  *See* Esposito Decl., Ex. 15 at CF 000188–191.

24         Although Travelers does not detail the specifics regarding lower defense rates or

25  substantive arguments it could have brought on behalf of the City, the prejudice is plain where

26  Travelers could not contribute at all to the settlement discussions.  The City's position is even

27  more untenable where it held all the necessary information for years, and even tendered notice of a

28

United States District Court
Northern District of California

12

1    different suit under the ICPC Policy in 1993.  Esposito Decl. at ¶ 18, Ex. 15 at CF 000188.[5]

2    Accordingly, because Travelers has shown late notice, the City's awareness of at least one of

3    Travelers' policies, and substantial prejudice from being unable to participate, the Court

4    **GRANTS** Travelers' motion for summary judgement.

5    **IV.    CONCLUSION**

6           For the reasons noted above, the Court **GRANTS** Travelers' motion for summary

7    judgment.  The Clerk is directed to terminate The Travelers Indemnity Company, The Phoenix

8    Insurance Company, and The Charter Oak Fire Insurance Company from the case.

9           **IT IS SO ORDERED.**

10   Dated:  9/21/2020

11   _____

     HAYWOOD S. GILLIAM, JR.
12   United States District Judge

---

[5] The City requests more time for discovery in order to obtain Travelers' loss reserves to
determine whether the settlements were reasonable or the legal rates to show there was a lack of
prejudice.  However, "an insurer's loss reserve cannot be accurately equated with an admission of
liability or the 'value of a particular claim.'" *Sekera v. Allstate Ins. Co.*, No. 14-cv-1162-JGB
(TBx), 2017 WL 6550425, at *10, n.4 (C.D. Cal. Sept. 19, 2017).  Additionally, the City has not
provided its "Rule 56(d) argument in detail" as directed by the Court at the January 16, 2020 case
management conference.  Accordingly, the Court **DENIES** the City's request.

United States District Court
Northern District of California

13