1
2
3
4                       UNITED STATES DISTRICT COURT

5                     NORTHERN DISTRICT OF CALIFORNIA

6

7    AMERICAN BANKERS INSURANCE              Case No.  19-cv-02237-HSG
     COMPANY OF FLORIDA,
8                                            **ORDER GRANTING SUMMARY**
                    Plaintiffs,              **JUDGMENT**
9
            v.                               Re: Dkt. Nos. 141, 145, 157, 158
10
11   NATIONAL FIRE INSURANCE
     COMPANY OF HARTFORD,
12
                    Defendant.
13

14          Pending before the Court are motions for summary judgment filed by Admiral Insurance

15   Company, *see* Dkt. Nos. 141 ("Admiral Mot."); 144 ("Opp. to Admiral"); 149 ("Admiral Reply");

16   National Fire Insurance Company of Hartford (as successor to Transcontinental Insurance

17   Company) and Columbia Casualty Company (collectively, "CNA Insurers"), *see* Dkt. Nos. 145

18   ("CNA Mot."); 154 ("Opp. to CNA"); 155 ("CNA Reply"); Insurance Company of the State of

19   Pennsylvania, *see* Dkt. Nos. 157 ("ICSOP Mot."); 160 ("Opp. to ICSOP"); 163 ("ICSOP Reply");

20   and American Bankers Insurance Company of Florida, *see* Dkt. Nos. 158 ("ABICOF Mot."); 165

21   ("Opp. to ABICOF"); 164 ("ABICOF Reply").  The Court **GRANTS** Defendants' motions.

22   **I.    BACKGROUND**

23          This action consists of two consolidated cases, *American Bankers Ins. Co. of Florida v.*

24   *The City of Walnut Creek*, No. 19-cv-2237, and *The City of Walnut Creek v. Admiral Ins. Co. et*

25   *al.*, No. 19-cv-3556.  Both actions stem from three underlying actions: *Coleman et al v. City of*

26   *Walnut Creek*, Contra Costa Superior Court, Case No. C-03-3157 ("*Coleman I*"), *Coleman et. al. v.*

27   *City of Walnut Creek*, Contra Costa Superior Court, Case No. C-12-2997 ("*Coleman II*"), and

28   *Garibian et al v. City of Walnut Creek*, Contra Costa Superior Court, Case No. C-14-0777

United States District Court
Northern District of California

("*Garibian*").  Underlying plaintiffs in those cases sued the City for its alleged failure to develop and maintain storm drains, which caused flooding and damage to their real property.  The City settled each case.  Dkt. No. 30 ¶¶ 10, 14 (First Amended Complaint).  The City alleges that Admiral Insurance Company, Insurance Company of the State of Pennsylvania, American Bankers Insurance Company of Florida, National Fire Insurance Company of Hartford, and Columbia Casualty Company, Travelers, and the Atlanta International Insurance Company should provide a defense and/or indemnification under policies in place between 1968 to 1986 for all damages and fees it incurred in resolving the underlying actions.  *Id.* ¶¶ 21–34.  The actions against Travelers and Atlanta International Insurance Company were dismissed with prejudice.  *See* Dkt. Nos. 119, 139.  The instant motions were then filed by the remaining Defendants.

**A.    Underlying Actions**

 On December 22, 2003, underlying plaintiffs Kenneth Coleman, Gina Coleman, Marc Malott, and Mary Malott filed the *Coleman I* action against the City.  Dkt. No. 141-6 ("Derfler Decl.") at ¶ 8, Ex. 6 (*Coleman I* Compl.).[1]  The *Coleman I* complaint alleged that due to the "expansion of the development of the City of Walnut Creek . . . and the diversion of ground water which results from the implementation of those plans," the underlying plaintiffs suffered property damage because of flooding.  *Id.*  In September 2006, the City settled with the underlying plaintiffs.  Derfler Decl. at ¶ 9, Ex. 7 (2006 Settlement Agreement).  As part of the 2006 Settlement Agreement, the City agreed to pay $50,000 to the underlying plaintiffs and $32,500 to their attorneys to compensate for any "physical injuries to only real or personal property, appurtenances and possession, as well as repairs thereto" between the time of the settlement and

---

[1] The Court **DENIES AS MOOT** Admiral's and ISCOP's motion for judicial notice of the complaints in the underlying actions because the request is unnecessary and duplicative. At the summary judgment stage, the Court may reasonably consider the evidence presented by the parties and determine the extent to which it is relevant.  It need not take judicial notice in order to consider the documents.  Admiral and ISCOP include the underlying complaints as exhibits.  *See* Derfler Decl., Ex. 6, 8, 9, Dkt. No. 157-4, Ex. A, B, C.  The Court further **DENIES AS MOOT** Admiral's motion for judicial notice of the City's responses to ICSOP's requests for admission and the City's responses to Admiral's interrogatories, which are also included as exhibits.  *See* Derfler Decl., Ex. 23, 24, 25.

1   December 31, 2012," and noted "the present expectation that [] funding will be available and that

2   the Future Storm Drain Facilities will be completed."  *Id.* at ADM 000126-127, ADM 000129.

3   The 2006 Settlement Agreement states:

4           Plaintiffs contend that at certain times within three years prior to
            December 22, 2003 and continuing thereafter, storm water flowing on
5           the surfaces of Walker Avenue and Homestead Avenue . . . flowed
            onto . . . the Properties so as to cause the Properties to be flooded . . .
6           and . . . as a result . . . [Plaintiffs] have suffered financial losses, loss
            of use and diminution in value of the Properties, and expenses for
7           repairs and replacements.

8   *Id.* at ADM 000125.

9           In 2010, the City notified the underlying plaintiffs that it did not intend to construct the

10  storm drains described in the 2006 settlement agreement.  *See* Derfler Decl. at ¶ 10, Ex. 8

11  (*Coleman II* Compl.).  The underlying plaintiffs then filed *Coleman II* on December 27, 2012,

12  raising the same claims as *Coleman I*, and including new allegations that the City breached the

13  2006 settlement agreement.  *Coleman II* Compl.  On May 19, 2014, Carlos and Beatriz Garibian,

14  Stanley and Jan Lindberg, Lauren Dodge, Michael Lannes, and Jeanne Dodge filed the *Garibian*

15  action.  Derfler Decl. at ¶ 11, Ex. 9 (*Garibian* Compl.).  The *Garibian* underlying plaintiffs further

16  alleged that "[i]n reasonable reliance on [the 2006 settlement agreement's] promise that the storm

17  water system would be improved and repaired, Plaintiffs expended substantial monies on

18  improvements to their properties."  *Id.* at ADM 000080.

19          *Garibian* and *Coleman II* were settled together on April 19, 2018.  *See* Derfler Decl. at

20  ¶ 12, Ex. 10 (2018 Settlement Agreement).  As part of the 2018 settlement, the City agreed to pay

21  underlying plaintiffs $297,837 and their attorneys $91,723.  *Id.* at ADM 000172-173.  The 2018

22  Settlement Agreement states that the *Coleman II* Plaintiffs "contend that, at certain times within

23  three years before December 27, 2012 and continuing thereafter, storm water . . . has not been

24  sufficiently captured . . ."  *Id.* at ADM 000169.  It further states that the *Garibian* Plaintiffs

25  "contend that, at certain times within three years before May 8, 2014 and continuing thereafter,

26  storm water . . . has not been sufficiently captured . . ."  *Id.* at ADM 000170.  The parties again

27  contemplated that because "the cost of the Future Storm Drain Facilities is reasonably expected to

28  exceed $10,000,000 due to unforeseen circumstances or unexpected costs, the City . . . may decide

United States District Court
Northern District of California

1  not to complete" the facilities, and that if this happened the *Coleman II* and *Garibian* actions could

2  be placed back on the court's calendar.  *Id.* at ADM 000174.

3          **B.    Travelers' Summary Judgment Order**

4          The Court previously granted the motion for summary judgment brought by The Travelers

5  Indemnity Company (as successor to Insurance Company of the Pacific Coast), The Phoenix

6  Insurance Company, and The Charter Oak Fire Insurance Company's (collectively, "Travelers").

7  *Am. Bankers Ins. Co. of Fla. v. Nat'l Fire Ins. Co. of Hartford*, No. 19-CV-02237-HSG, 2020 WL

8  5630017 (N.D. Cal. Sept. 21, 2020) ("Travelers' Order").  Travelers had issued three policies to

9  the City:  the Phoenix Policy for the period January 16, 1968 to January 16, 1971, the Charter Oak

10  Policy for the period January 16, 1971 to July 1, 1971, and the ICPC Policy for the period July 1,

11  1975 to July 1, 1976.  *Id.* at *2.  To show an occurrence of property damage under a continuous

12  injury trigger of coverage theory, the City argued that the "underlying actions stemmed from

13  continuing injury to the plaintiffs from the City's early development, beginning in the early

14  1960s."  *Id.* at *5.  But the Court found that "[t]he earliest indication of actual property damage

15  from development was [described] in the 2006 Settlement Agreement where underlying plaintiffs

16  sought damages incurred 'within three years prior to December 22, 2003 and continuing

17  thereafter.' "  *Id.* at *6.  Accordingly, the Court granted Travelers' motion because the City failed

18  to show an occurrence of property damage during the policy periods.[2]  *Id.* at *4.

19  **II.    LEGAL STANDARD**

20          Summary judgment is proper when a "movant shows that there is no genuine dispute as to

21  any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

22  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson*

23  *v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if there is evidence in the

24  record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party.  *Id.*  The

25  Court views the inferences reasonably drawn from the materials in the record in the light most

26  favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

27

28  _____

[2] The Court also granted summary judgment on the alternative basis that Travelers had established substantial prejudice due to the City's failure to timely tender notice.  Travelers' Order at *4.

United States District Court
Northern District of California

1  574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations,"

2  *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v.*

3  *Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008).

4        The moving party bears both the ultimate burden of persuasion and the initial burden of

5  producing those portions of the pleadings, discovery, and affidavits that show the absence of a

6  genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the

7  moving party will not bear the burden of proof on an issue at trial, it "must either produce

8  evidence negating an essential element of the nonmoving party's claim or defense or show that the

9  nonmoving party does not have enough evidence of an essential element to carry its ultimate

10  burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102

11  (9th Cir. 2000).  Where the moving party will bear the burden of proof on an issue at trial, it must

12  also show that no reasonable trier of fact could not find in its favor.  *Celotex Corp.*, 477 U.S. at

13  325.  In either case, the movant "may not require the nonmoving party to produce evidence

14  supporting its claim or defense simply by saying that the nonmoving party has no such evidence."

15  *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1105.  "If a moving party fails to carry its initial

16  burden of production, the nonmoving party has no obligation to produce anything, even if the

17  nonmoving party would have the ultimate burden of persuasion at trial."  *Id.* at 1102–03.

18        "If, however, a moving party carries its burden of production, the nonmoving party must

19  produce evidence to support its claim or defense."  *Id.* at 1103.  In doing so, the nonmoving party

20  "must do more than simply show that there is some metaphysical doubt as to the material facts."

21  *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.  A nonmoving party must also "identify with

22  reasonable particularity the evidence that precludes summary judgment."  *Keenan v. Allan*, 91

23  F.3d 1275, 1279 (9th Cir. 1996).  If a nonmoving party fails to produce evidence that supports its

24  claim or defense, courts enter summary judgment in favor of the movant.  *Celotex Corp.*, 477 U.S.

25  at 323.

26  **III.   DISCUSSION**

27        Defendants' motions largely include the same arguments previously made by Travelers,

28  including the claim that the City has not shown that property damage occurred during the policy

5

*United States District Court*
*Northern District of California*

periods.  Similar to the Travelers' policies, the various policies include a definition of "occurrence" that requires the damage to occur during the policy period.  Despite the City's contention that it augmented the record beyond what was at issue on Travelers' motion, the Court finds that the City again fails to create a genuine issue of fact as to whether there was an occurrence of property damage during the relevant policy periods.[3]  Accordingly, the Court **GRANTS** Defendants' motions for summary judgment.

## A.    Policies

In the Travelers' order, the Court analyzed two definitions of "occurrence."  Travelers' Order at *5-6.  Specifically, the ICPC Policy defined an "occurrence" as "an event or a continuous or repeated exposure to conditions which causes injury to persons or damage to property during the policy period." *Id.* at *5.  The Court observed that this language clearly distinguished between the causative event and the resulting injury or damage. *Id.*  And the Charter Oak Policy defined an "occurrence" as "an accident, including injurious exposure to conditions, which results, during the period this policy is in effect, in bodily injury or property damage." *Id.*  Even though the Charter Oak Policy did not include the "continuous or repeated" language, the Court applied the same rationale that it is the damage, and not necessarily the accident, that must occur during the policy period. *Id.* (citing *Montrose Chem. Corp. v. Admiral Ins. Co.*, 10 Cal. 4th 645, 669, 42 Cal.Rptr.2d 324, 913 P.2d 878 (1995)).

Here, the definitions of "occurrence" in the relevant policies similarly distinguish between the causative event and the resulting damage.[4]  The ICSOP Policy, Policy No. 4177-8136, issued

---

[3] The parties raise various evidentiary objections to the City's evidence.  *See e.g.*, Admiral Reply at 13-15; CNA Reply at 8; ABICOF Reply at 2-4.  But even if it considers these materials, the Court still finds that the City has not raised any genuine issue of material fact.  Accordingly, the objections are **OVERRULED AS MOOT**.

[4] American Bankers notes that neither it nor the City has a copy of the alleged policy, and argues that the City cannot prove the substance of the relevant policy provisions and thus cannot meet its initial burden to establish coverage.  ABICOF Mot. at 6.  The City argues that its secondary evidence establishes the named insured, policy number, policy period, policy limit and key terms.  *See* Opp to ABICOF at 7–9.  Even if the American Bankers policy followed the form of the Travelers' Policy, as the City asserts, the Court still finds that American Bankers is entitled to summary judgment for the same reasons explained with regard to the other occurrence-based policies.  Additionally, the City requests judicial notice of *County Sanitation District v. Harbor Ins. Co.*, 17 Cal.App.4th 1622 (1993) "for the factual and undisputed content relating to American Bankers' general liability policy issued in 1974 to another similarly insured."  Dkt. No. 165-2 at 2.

for the period of July 1, 1977 to July 1, 1978, includes the following definition:

> The term "Occurrence" wherever used herein shall mean an accident or happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in personal injury, property damage or advertising liability during the policy period.

Freedman Decl. ¶2, Ex. A at CWC 0009700.

Admiral issued four policies to Walnut Creek:  (1) Policy No. 6CM0276 for the period July 1, 1976 to July 1, 1977 ("1976 Policy"), (2) Policy No. 78HWP3005 for the period February 1, 1978 to February 1, 1979 ("1978 Policy"), (3) Policy No. 9CM0727 for the period February 1, 1979 to February 1, 1980 ("1979 Policy"), and (4) Policy No. 0CM0934 for the period February 1, 1980 to February 1, 1981 ("1980 Policy).  Dkt. No. 141-2 ("Onslager Decl.") at ¶ 6–9, Ex. 16 (1976 Policy), Ex. 17 (1978 Policy), Ex. 18 (1979 Policy), Ex. 19 (1980 Policy).  With respect to bodily injury or property damage, the 1976 Policy defines "occurrence" as "an accident, or event including continuous or repeated exposure to conditions, which results in bodily injury or property damage."[5]  1976 Policy at ADM 000242.  The other three policies provide a slightly different definition:  "an accident, or event including continuous or repeated exposure to conditions, which results during the policy term, in bodily injury or property damage."  1978 Policy at ADM 000286; 1979 Policy at ADM 000591; 1980 Policy at ADM 000591.

The Columbia Casualty Company Policy, Policy No. RSX 1864162, issued for the period July 1, 1976 to July 1, 1977, incorporates the definition of "occurrence" from the underlying 1976 Admiral Policy.  Dkt. No. 145-3 ("Tafe Decl.") at ¶ 2, Ex. 1; *see also* Opp. to CNA at 8.  And the National Fire Insurance Company Policies, Policy Nos. SXP 358 41 99, SXP 358 42 32, SXP 358 43 66, SXP 358 43 98, issued for the period February 1, 1981 to February 1, 1986, define an "occurrence" to mean "an accident or event, including injurious exposure to conditions, which

---

Because the Court need not consider the case in its analysis, the Court **DENIES** the request as moot.  *See In re Facebook, Inc. S'holder Derivative Privacy Litig.*, 367 F. Supp. 3d 1108, 1118 (N.D. Cal. 2019) (denying as moot request for judicial notice of documents not considered by the court).

[5] All of the Admiral Policies limit the definition of property damage to that which "occurs during the policy period."  1976 Policy at ADM 000243; 1978 Policy at ADM 000286, ADM 000287; 1979 Policy at ADM 000591; 1980 Policy at ADM 000590, ADM 000591.

United States District Court
Northern District of California

results during the policy period , in personal injury, property damage or public official errors and omissions."  Tafe Decl. at ¶ 3–6, Ex. 2-5.

### B.    "Occurrences" During the Policy Periods

All Defendants argue that the underlying actions did not seek recovery for property damage that occurred during the policy period of any of the policies.  ICSOP Mot. at 13–19; Admiral Mot. at 11–13; CNA Mot. at 2–3; ABICOF Mot. 7–9.  ICSOP contends that "no California court has found coverage for property damage liability where the underlying claimant does not allege that it suffered property damage during the policy period," *see* ICSOP Mot. at 17, and notes that "the City has cited no case to the contrary."  *See* ICSOP Reply at 4 n.1.  Defendants maintain that the allegations in the pre-litigation claim forms, underlying complaints, and settlement agreements show that underlying plaintiffs were not injured until decades after the policies ended.  *See* ICSOP Mot. at 5–7, 10; Admiral Mot. at 2–4; CNA Reply at 2; ABICOF Reply at 9; *see also* Derfler Decl. at ¶ 3–12, Exs. 1–5 (Pre-litigation Claim Forms), Ex. 6 (*Coleman I* Compl.), Ex. 7 (2006 Settlement), Ex. 8 (*Coleman II* Compl.), Ex. 9 (*Garibian* Compl.), Ex. 10 (2018 Settlement Agreement).

As an initial matter, it is clear that none of the underlying plaintiffs ever claimed that damage occurred during the long-ago policy periods.  The pre-litigation claim forms, dated in either June 2003 or February 2014, include the question, "When did the damage or injury occur?"  And the underlying plaintiffs indicated that the damage occurred either on December 16, 2002, January 16, 2003, or on or about November 2012 and continuing.  *See* Pre-litigation Claim Forms.  And as previously noted, in December 2003, the *Coleman I* plaintiffs filed a complaint alleging their personal property had been damaged and they were unable to use portions of their real property for "each of the three years past."  *Coleman I* Compl. at ADM 000007.  The 2006 Settlement Agreement sought recovery for damages incurred "at certain times within three years prior to December 22, 2003 and continuing thereafter."  2006 Settlement Agreement at ADM 000125.  The *Garibian* Complaint filed in May 2014 noted that "[f]or many years before Defendant's acts complained of herein occurred, surface waters flowing near and on Plaintiffs' properties were disbursed without damage to Plaintiffs' property."  *Garibian* Compl. at ADM

United States District Court
Northern District of California

1    000079.  And the 2018 Settlement Agreement noted the *Coleman II* plaintiffs sought recovery for

2    damages incurred "at certain times within three years before December 2012 and continuing

3    thereafter" and the *Garibian* plaintiffs sought recovery for damages incurred "at certain times

4    within three years before May 8, 2014 and continuing thereafter."  *See* 2018 Settlement

5    Agreement at ADM 000169 and ADM 000170.

6         The City acknowledges that the underlying plaintiffs did not allege damage during the

7    policy periods.  *See e.g.*, Opp. to Admiral at 16 ("The City concedes that the Underlying Plaintiffs

8    did not specifically claim they suffered damages during Admiral's policy periods between 1976

9    and 1983.").  Relying on a continuous injury trigger of coverage theory, the City nonetheless

10   contends that it has expanded the record to show that property damage occurred during the

11   relevant policy periods, pointing to circumstantial evidence of conditions of "inadequate drainage

12   and repeated rains" during the 1970s, 1980s, and 1990s.  *See* Opp. to ICSOP at 2.  In *Montrose*,

13   the California Supreme Court explained that under a continuous injury trigger of coverage theory,

14   "the timing of the accident, event, or conditions *causing* the . . . property damage . . . can occur

15   before or during the policy period," and "[i]t is only the *effect*- the occurrence of . . . property

16   damage during the policy period, resulting from a sudden accidental event or the 'continuous or

17   repeated exposure to conditions'" that matters.  *Montrose*, 10 Cal. 4th at 675 (emphasis in

18   original).  So the central question is whether the City has raised a triable issue of fact as to whether

19   property damage to the underlying properties from some event or continuous exposure to

20   conditions occurred *during* the policy periods.  The Court finds that it has not.

21        The City largely relies on the existence of a "critical" flooding problem to suggest that the

22   underlying properties *must* have suffered damages:

> The record establishes the flooding to be critical, severe, and ongoing
> over decades.  The flooding (damage) occurred because of the
> repeated exposure to the inadequate drainage system and regular
> rainfalls (the conditions).  Clearly, had the drainage system been fixed
> in either the 1970s, the 1980s, the 1990s, or the 2000s, the underlying
> plaintiffs would not have suffered damages.

26   Opp. to ICSOP at 23.  Similarly, citing its evidence regarding efforts to construct a storm drain in

27   the 1970s, the City reasons that "[i]f the flooding problem was so 'critical' to necessitate these

28   enormous efforts to fix it . . . then undoubtedly were the subject properties actually damaged."

9

1    Opp. to ICSOP at 8 (citing Dkt. No. 144-2 ("Waymire Decl."), ¶ 8, Ex. 28 at CWC 6874).  The

2    City's evidence concerning the 1980s and 1990s is similarly speculative.  For example, the City

3    references a newspaper article indicating that an area along Homestead Avenue needed drainage

4    improvement, *see* Waymire Decl. ¶ 15, Ex. 29, in asserting that it "appears [the] drainage system

5    still was inadequate in the 1980s."  Opp. to ICSOP at 8. [6]

6         In effect, the City seeks to establish that "continuous conditions, i.e. inadequate drainage

7    and repeated rains," *see* Opp. to ICSOP at 2, existed in earlier decades when the policies were in

8    effect, then makes conclusory assertions that property damage must have occurred in light of these

9    conditions.  But as noted, whether continuous conditions existed before or during the policy period

10   is immaterial if those conditions did not result in property damage during the policy period.

11   The flaw in the City's logical leap is demonstrated, to take one example, by the allegation in the

12   *Garibian* Complaint that "[f]or many years before Defendant's acts complained of herein

13   occurred, surface waters flowing near and on Plaintiffs' properties were disbursed without damage

14   to Plaintiffs' property."  *Garibian* Compl. at ADM 000079.

15        The Court agrees that the City's "own allegations of causal conduct, spanning several

16   decades, [are] no substitute for the dispositive missing element of property damage during the

17   policy periods."  *See* CNA Reply at 4; *see also* ICSOP Reply at 5.  Speculation about extraneous

18   facts does not trigger a duty to defend or duty to indemnify, "[n]or is such speculation sufficient to

19   create a triable issue of material fact."  *See Advent, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh,*

20   *PA*, 6 Cal. App. 5th 443, 460, 211 Cal. Rptr. 3d 685, 698 (2016); *see also Hurley Constr. Co. v.*

21   *State Farm Fire & Cas. Co.*, 10 Cal. App. 4th 533, 538 (1992) ("A corollary to this rule is that the

22   insured may not speculate about unpled third[-]party claims to manufacture coverage.").

23

24   [6] Moreover, the Court notes that any evidence concerning the 1990s is well beyond any of the
     policy periods at issue in this action.  The City invokes a ICSOP 1992-1993 policy in its
25   opposition, but that policy is not referenced in the complaint, and ICSOP explains that "the City
     [has] not alleged any claim based on the 1992-1993 Policy, [and that] ICSOP has not even had an
26   opportunity to issue a coverage determination on the Policy yet."  *See* ICSOP Reply at 16.  Given
     that this case has already advanced through the completion of discovery and fully-briefed
27   summary judgment motions, the Court does not consider any new claim based on that policy.  *See*
     *Wasco Prods. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("Simply put, summary
28   judgment is not a procedural second chance to flesh out inadequate pleadings." (quotation
     omitted)).

The bottom line here is that the City is suing to recover amounts it spent to settle a trio of lawsuits.  It is clear that those lawsuits only claimed that damage occurred, at the earliest, in 2000.  And it is undisputed that Defendants' policies were in force only until 1986 at latest.  So the City tries to show that, notwithstanding the clear scope of the actual suits it settled, the damage actually occurred decades ago while the policies were in force.  This effort, while creative, falls well short as a matter of law.  At best, the City's evidence shows that certain conditions existed prior to or during the policy periods.  But it wholly fails, even taking all inferences in the City's favor, to raise a triable issue of fact as to the legally relevant question of whether property damage to the underlying properties from some event or continuous exposure to conditions occurred during the policy periods.

## IV.   CONCLUSION

Because the City fails to show a triable issue of fact as to whether property damage occurred during the relevant policy periods, the Court **GRANTS** Defendants' motions for summary judgment.[7]  The Clerk is directed to enter judgment in favor of Defendants and close the file.


**IT IS SO ORDERED.**

Dated: 2/4/2021

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[7] Because this ground is a sufficient basis to grant Defendants' motion, the Court does not reach Defendants' additional arguments.